IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

REGIONS BANK, *as Successor* :
*Trustee of the Carl T. Martin* :
*Estate-Trust Part One, and the* :
*Carl T. Martin Estate-Trust* :
*Part Two, as established under* :
*the last will and testament of* :
*Carl T. Martin, deceased,* :    CIVIL ACTION 10-0145-M
 :
    Plaintiff, :
 :
vs. :
 :
DAVID STEWART, :
 :
    DEFENDANT. :

MEMORANDUM OPINION AND ORDER

This action comes before the Court on an Amended Motion for Summary Judgment, filed by Plaintiff Regions Bank (Docs. 46-47). Jurisdiction has been invoked in this Court under 28 U.S.C. § 1332 on the basis of diversity (Doc. 1). The parties filed written consent and this action has been referred to the undersigned Magistrate Judge to conduct all proceedings and order the entry of judgment in accordance with 28 U.S.C. § 636(c) and Fed.R.Civ.P. 73 (*see* Doc. 16). After consideration, Plaintiff's Motion (Doc. 46-47) is **GRANTED**.

The relevant facts, briefly, are as follows. Plaintiff Regions Bank is an Alabama corporation with its principal place of business in Birmingham (Doc. 1, ¶3). Defendant David Stewart is a citizen who resides in Oklahoma (Doc. 1, ¶4; Doc. 8, ¶4). ZLM Acquisitions, LLC, is an Alabama limited liability company

which is not a party to this action(Doc. 1, ¶14; Doc. 8, ¶14); Stewart is "the sole or majority member of ZLM" (Doc. 1, ¶15; Doc. 8, ¶15). On February 16, 2009, ZLM entered into a purchase agreement with Regions "to purchase various lots and property . . . located in Orange Beach, Baldwin County, Alabama" for $2,000,000 (Doc. 1, ¶14; Doc. 8, ¶14). ZLM paid one million dollars cash and executed a promissory note for the balance due (Doc. 1, ¶16; Doc. 8, ¶16; *see* Doc. 1, Exhibit A). "On the same day, the Defendant, in his individual capacity, executed the unconditional Personal Guaranty in favor of the Plaintiff in the amount of $1,000,000.00" (Doc. 1, ¶17; Doc. 8, ¶17; *see* Doc. 1, Exhibit 1).

Regions asserts that ZLM is now in default (Doc. 1, ¶21) and has brought this action against Stewart, raising claims of breach of contract and personal guaranty (Doc. 1). Though Plaintiff originally only sought this Court's ruling on liability (Docs. 22-23, 41), Regions now seeks a determination on damages as well and has brought this Motion for Summary Judgment (Doc. 46-47). Defendant has responded to the motion (Doc. 50) to which Plaintiff has replied (Doc. 51).

The Rules of Civil Procedure, in discussing summary judgment, state that

> an adverse party [to a motion for summary judgment] may not rest upon the mere allegations or denials of the adverse party's

2

> pleading, but the adverse party's response,
> by affidavits or as otherwise provided in
> this rule, must set forth specific facts
> showing that there is a genuine issue for
> trial.  If the adverse party does not so
> respond, summary judgment, if appropriate,
> shall be entered against the adverse party.

Fed.R.Civ.P. 56(e); *see also Celotex Corporation v. Catrett*, 477 U.S. 317, 325-27 (1986).  The Court further bears in mind, with regard to the motion for summary judgment, that "there is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party.  If the evidence is merely colorable or is not significantly probative, summary judgment may be granted."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986) (citations omitted).  Summary judgment may be granted against a party who fails to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial.  *Id.*

The Court will first address the issue of liability.  In the Personal Guaranty, Stewart "guarantee[d] that the Guaranteed Obligations [would] be paid strictly in accordance with their terms regardless of any law, regulation or order now or hereafter in effect. . . The liability of the Guarantor hereunder shall be absolute" (Doc. 1, Exhibit 1, § 2).  The promissory note stated the following terms:

> Accrued interest shall be paid to Payee in quarterly installments on March 31, June 30, September 30 and December 31 for each quarter during the term hereof. Principal and any accrued but unpaid interest hereunder shall be payable in full on February 16, 2010; provided however that Payee may extend this maturity date one (1) time for an additional six (6) months by giving written notice to Payee on or prior to the 1 year anniversary date of this note, in which event the maturity date as so extended shall be August 16, 2010 (the 18 mos. anniversary of Closing).

(Doc. 1, Exhibit A, p. 1).

The Court takes judicial notice that Mardi Gras Day 2010 was February 16, 2010. J. Tyler Turner, III, Trust Officer and Property Manager in the Natural Resource and Real Estate division of Regions Bank, stated, by way of affidavit, that

> [i]t was [his] responsibility to review and determine whether the note payments were timely made. ZLM Acquisitions, LLC did not make the final payment due under the note by the maturity date stated in the note (February 16, 2010). Because Mardi Gras Tuesday fell on February 16, 2010, and because I know from my involvement as a bank employee that Mardi Gras Tuesday is a holiday for many businesses in Mobile and Baldwin counties, Alabama, I allowed one extra day before determining the note to be in default so as to not be confusing with Mardi Gras Tuesday. ZLM Acquisitions, LLC, however, did not make the final note payment by Wednesday, February 17, 2010, or provide written notice of a maturity date extension by that day, either.

(Doc. 48, Exhibit A, ¶3). Stewart has admitted that "written

4

notification of this exercise [the maturity date extension] was not provided until February 19, 2010 (Doc. 50, p. 3).

Under Alabama law, "[t]he elements of a breach-of-contract claim [] are (1) a valid contract binding the parties; (2) the plaintiffs' performance under the contract; (3) the defendant's nonperformance; and (4) resulting damages." *Reynolds Metals Co. v. Hill*, 825 So.2d 100, 105-06 (Ala. 2002) (*citing State Farm Fire & Cas. Co. v. Slade*, 747 So.2d 293, 303 (Ala. 1999)). Alabama has held that personal guaranties may constitute valid, binding contracts. *See Simonetti Bros. Produce Co. v. Peter Fox Brewing Co.*, 197 So. 38, 42 (Ala. 1940); *Ex parte Kaschak*, 681 So.2d 197, 200-01 (Ala. 1996). To enforce a guaranty obligation, a creditor must demonstrate the due obligation, "and if for any reason the debtor is not bound to make payment to the creditor, then the creditor may not hold the guarantor liable. Like a surety, a guarantor is liable only in the event and to the extent that the principal is liable." *Ex parte Kaschak*, 681 So.2d at 201 (*citing* 38 Am.Jur.2d *Guaranty* § 77 (1968)).

The Court finds that the language in the promissory note created a binding contract which appears to have been breached by ZLM when it failed to make payment or seek an extension of the obligation in a timely manner. The Court further finds that Stewart bound himself, in the Personal Guaranty, to make payment when ZLM failed to honor its contract.

Defendant, in response, has argued that there has been no breach of contract by ZLM. Those arguments will now be examined.

Stewart has asserted that ZLM gave verbal notice of its intent to exercise the maturity date extension at a meeting that took place in November 2009 (Doc. 50, p. 3). Though Defendant does not appear to be asserting that such extension was actually accomplished, the Court holds that it was not. The promissory note states that the extension had to be executed in writing on or before February 16, 2010 (Doc. 1, Exhibit A, p. 1). The written notification had not been delivered as of February 17, 2010 (Doc. 48, Exhibit A, ¶3); Stewart admits that it was not delivered until February 19, 2010 (Doc. 50, p. 3). As the maturity date was not extended, the terms of the promissory note indicate that final payment of unpaid principal and interest was due on February 16, 2010 (Doc. 1, Exhibit A, p. 1).

Stewart also argues that when Turner, Plaintiff's Property Manager, unilaterally extended the obligation date by one day he discharged Stewart's obligations as personal guarantor (Doc. 50, pp. 5-7). Admitting his failure "to produce a case which is even remotely close to the facts here" (Doc. 50, p. 5), Defendant asserts that statutory law provides for this outcome:

> (c) If a person entitled to enforce an instrument agrees, with or without consideration, to an extension of the due date of the obligation of a party to pay the instrument, the extension discharges an

> indorser or accommodation party having a
> right of recourse against the party whose
> obligation is extended to the extent the
> indorser or accommodation party proves that
> the extension caused loss to the indorser or
> accommodation party with respect to the right
> of recourse.

Ala. Code § 7-3-605. The Court notes, however, the following specific provision of the Personal Guaranty:

> The Guarantor agrees that the Seller may
> at any time and from time to time, without
> notice to or further consent of the
> Guarantor, extend the time of payment of, or
> exchange or surrender any collateral for, any
> of the Guaranteed Obligations, and may also
> make any agreement with the Buyer or with any
> other party liable on any of the Guaranteed
> Obligations for the extension, renewal,
> payment, compromise, discharge or release
> thereof, in whole or in part, or for any
> modification of the terms thereof, without in
> any way impairing or affecting this Guaranty
> or the absolute liability of the Guarantor
> hereunder.

(Doc. 1, Exhibit 1, § 1, ¶2). Stewart goes on, in the Guaranty, to state that the Guarantee is absolute and that the obligations will be paid "regardless of any law, regulation or order now or hereafter in effect in any jurisdiction affecting any of such terms or the rights of the Seller with respect thereto" (Doc. 1, Exhibit 1, § 2). Going even further, Stewart agreed that the liability was "unconditional irrespective of . . . any change in the time, manner or place of payment of, or in any other term of, all or any part of the Guaranteed Obligations" (Doc. 1, Exhibit

7

1, § 2(iii)).  Without deciding whether the statutory language is applicable here, the Court finds that Stewart's Guarantee precludes its application.

The Court also notes that Stewart, to avail himself of this statute, must "prove[] that the extension caused loss to [him] with respect to the right of recourse."  Ala. Code § 7-3-605(c). Defendant has demonstrated no such loss.

Stewart argues further, , though, pointing to other provisions from the same statute:

> (e) If the obligation of a party to pay an instrument is secured by an interest in collateral and a person entitled to enforce the instrument impairs the value of the interest in collateral, the obligation of an indorser or accommodation party having a right of recourse against the obligor is discharged to the extent of the impairment. The value of an interest in collateral is impaired to the extent (i) the value of the interest is reduced to an amount less than the amount of the right of recourse of the party asserting discharge, or (ii) the reduction in value of the interest causes an increase in the amount by which the amount of the right of recourse exceeds the value of the interest. The burden of proving impairment is on the party asserting discharge.
>
> (f) If the obligation of a party is secured by an interest in collateral not provided by an accommodation party and a person entitled to enforce the instrument impairs the value of the interest in collateral, the obligation of any party who is jointly and severally liable with respect to the secured obligation is discharged to the extent the impairment causes the party asserting discharge to pay

> more than that party would have been obliged
> to pay, taking into account rights of
> contribution, if impairment had not occurred.
> If the party asserting discharge is an
> accommodation party not entitled to discharge
> under subsection (e), the party is deemed to
> have a right to contribution based on joint
> and several liability rather than a right to
> reimbursement. The burden of proving
> impairment is on the party asserting
> discharge.

Ala. Code § 7-3-605. Stewart has asserted that Plaintiff acted "arbitrarily, capriciously and in bad faith [in] refusing to pay anticipated expenses for the development of the property in accordance with the Escrow Agreement[,] significantly impair[ing] the ability of ZLM to go forward with the project in order to develop the property" (Doc. 50, p. 7). Defendant has asserted that these actions not only hurt ZLM, but increased Stewart's exposure for liability (*id.*).

Regions, in its reply, has asserted that Stewart has waived this defense by not raising it until now (Doc. 51, p. 5). A review of Defendant's Answer confirms that this defense was not raised there (Doc. 8). The Court finds this defense to be waived.

The Court also notes, though, that Stewart, in the Guaranty, specifically states that his liability is absolute, "irrespective of . . . any other circumstance which might otherwise constitute a defense available to, or a discharge of, the Buyer in respect

of the Guaranteed Obligations or of the Guarantor hereunder" (Doc. 1, Exhibit 1, § 2(iv)).  This language precludes Stewart's argument relevant to Ala. Code § 7-3-605(e-f).  Additionally, the Court notes that although Defendant has asserted that Regions's actions impaired its ability to develop the property, no proof has been offered.

In summary, the Court finds that Regions has demonstrated a breach of contract and that Stewart is liable, pursuant to his Personal Guaranty, for damages of up to one million dollars.  As such, the Court further **GRANTS** Plaintiff's Motion for Summary Judgment (Docs. 46-47) as to Stewart's liability.  The Court will now discuss damages.

The Court notes at the outset that Regions has, in its Motion, set out its claims for particular types of damages (Doc. 47, pp. 19-22).  Stewart, in responding to the Motion, has focused his arguments on liability and has not addressed the issue of damages at all (*see* Doc. 50).  The Court will, nevertheless, examine Plaintiff's claims.

Property Manager Turner, by way of affidavit, states that "[t]he principal balance due under the Note is $685,127.29. . . . Accrued interest under the Note between February 5, 2009 and February 16, 2010 totaled $3,840.09.  Accrued default interest under the Note between February 17, 2010 and August 16, 2010

totaled $28,418.51. Default interest continues to accrue as of August 16, 2010, at a per diem rate of $157.01" (Doc. 48, Exhibit A, ¶ 8). As noted previously, these amounts are undisputed.

Regions also seeks attorneys fees in enforcing Stewart's Personal Guaranty. In his affidavit, Allen E. Graham, Plaintiff's counsel, states that he charged an hourly rate of $250.00 and that Bradley Sanders, associate counsel, charged an hourly rate of $175.00 in representing Regions in this matter (Doc. 48, Exhibit F, ¶ 3). Graham goes on to state that attorneys fees amount to $53,091.00 and that expenses total $2,675.67 (Doc. 48, Exhibit F, ¶ 4). Again, these amounts are unchallenged. The Court is familiar with the customary attorney charges in this community, has reviewed the fee bills submitted (Doc. 48, Exhibit G, Exhibit 1), and finds them to be reasonable.

For the convenience and understanding of all, the Court has put all of the damages in the following chart:

| | |
|---|---:|
| Principal due on Note | $685,127.29 |
| Interest between 2/5/2009 and 2/16/2010 | 3,840.09 |
| Accrued default interest between 2/17/2010 and 8/16/2010 | 28,418.51 |
| Accrued default interest from 8/17/2010 through 11/8/2010 | 13,031.83 |
| Attorneys fees | 53,091.00 |
| Expenses | 2,675.67 |
| Total amount due as of 11/8/2010 | $786,184.39 |

The Court finds that Regions has demonstrated that it is entitled to damages of seven hundred eighty-six thousand, one hundred eighty-four dollars and thirty-nine cents ($786,184.39) as of November 8, 2010 and that Stewart is liable for the payment of those damages.  Therefore, the Court **GRANTS** Regions's Motion for Summary Judgment in its entirety (Docs. 46-47).  As this Motion disposes of all matters in this action, judgment will be entered by separate Order.

DONE this 8th day of November, 2010.

                                         s/BERT W. MILLING, JR.
                                         UNITED STATES MAGISTRATE JUDGE